[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 6, 2012
JOHN LEY
CLERK

No. 11-14293
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-14016-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS ROSALES-BRUNO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 6, 2012)

Before PRYOR, MARTIN and KRAVITCH, Circuit Judges.

MARTIN, Circuit Judge:

Jesus Rosales-Bruno appeals his sentence of eighty-seven months imprisonment, imposed following his plea of guilty to one count of illegal reentry following deportation, in violation of 8 U.S.C. § 1326(a). In this appeal, Rosales-Bruno claims that the district court erred by enhancing his sentence based on its finding that his prior conviction for false imprisonment under Florida law qualified as a conviction for a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). See Fla. Stat. § 787.02 (defining "false imprisonment" as "forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will").

Rosales-Bruno contends that, because Florida's false imprisonment statute creates criminal liability for detaining another person "secretly," it is possible to commit the offense without employing the "physical force" contemplated in the Guidelines. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). From there, Rosales-Bruno argues that the government failed to establish that he did, in fact, employ "physical force" when he committed the offense of false imprisonment. Because the government has not proven that Rosales-Bruno's guilty plea for false imprisonment necessarily supported a conviction for a violent felony, we vacate Rosales-Bruno's sentence and remand.

The Sentencing Guidelines impose a sixteen-level enhancement if an alien

"was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii) (Nov. 1, 2011). "We review de novo whether a defendant's prior conviction qualifies as a 'crime of violence' under the Sentencing Guidelines." United States v. Harris, 586 F.3d 1283, 1284 (11th Cir. 2009).

We pursue a "modified categorical approach" in making the determination about whether a prior conviction was for a "crime of violence." United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th Cir. 2010); see also Johnson v. United States,— U.S. —, 130 S. Ct. 1265, 1273 (2010). Under this approach, we first look to the "fact of conviction and the statutory definition of the prior offense, as well as any charging paper and jury instructions to ascertain whether," as a formal matter, committing the offense required committing a "crime of violence." Palomino Garcia, 606 F.3d at 1328 (quotation marks omitted); see also James v. United States, 550 U.S. 192, 202, 127 S. Ct. 1586, 1594 (2007). However, where the statutory definition of the prior offense encompasses both violent and nonviolent conduct, we look beyond the fact of conviction and elements of the offense to determine whether the prior conviction falls under a particular statutory phrase that qualifies it as a "crime of violence." See Johnson 130 S. Ct. at 1273.

In making this second inquiry, we limit our review to reliable materials that

allow us to determine whether the particular conviction "necessarily" rested on a fact establishing the crime as a violent offense. Shepard v. United States, 544 U.S. 13, 21, 125 S. Ct. 1254, 1260 (2005). Where, as here, the prior conviction stems from a guilty plea, the materials we review include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." Id. at 26, 125 S. Ct. at 1263. In that vein, we may also rely on facts contained in a presentence investigation report (PSR), so long as those facts are undisputed. United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009); see also Shepard, 544 U.S. at 24, 125 S. Ct. at 1261 (plurality opinion) (stating that, for a pleaded conviction, "the only certainty . . . lies . . . in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea"). In contrast, we do not "rely on police reports or other documents supporting the criminal complaint because a defendant generally does not admit the conduct described in those documents." Palomino Garcia, 606 F.3d at 1328 (citing Shepard, 544 U.S. at 22–23, 125 S. Ct. at 1260–61).

Addressing Rosales-Bruno's appeal then, we first consider whether false imprisonment under Florida law is categorically a "crime of violence." Id. at

4

1326.[1]  While the Commentary of the Guidelines identifies several offenses as

crimes of violence, it does not specify false imprisonment as being among that

group.  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  Thus, we must decide whether a

conviction for false imprisonment under Florida law "has as an element the use,

attempted use, or threatened use of physical force against the person of another."

Id.

The meaning of "physical force" is a question of federal law, not state law.

Palomino Garcia, 606 F.3d at 1331.  But, in determining whether a conviction for

false imprisonment under Fla. Stat. § 787.02 is a "crime of violence" for

sentencing enhancement purposes, we are bound by Florida courts' determination

and construction of the substantive elements of that state offense.  See Johnson,

130 S. Ct. at 1269; see also Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d

1330, 1348 (11th Cir. 2011) (affording Johnson deference to states' intermediate

---

[1] In Brooks v. Ashcroft, we stated in dicta that the defendant "was convicted under Fla. Stat. § 787.02, False Imprisonment, which is a crime of violence."  283 F.3d 1268, 1273 n.5 (11th Cir. 2002).  But, since Brooks, the Supreme Court has clarified the "crime of violence" analysis considerably.  See Johnson, 130 S. Ct. at 1273; Shepard, 544 U.S. at 16, 125 S. Ct. at 1257.  Indeed, in an implicit acknowledgment that we lack binding precedent on this question, we have since Shepard explicitly eschewed holding that a Florida false imprisonment conviction is categorically a crime of violence.  See United States v. Flores-Navarro, 267 F. App'x 830, 833 n.2 (11th Cir. 2008) ("Nothing herein should be construed as holding that a Florida false imprisonment conviction is always a crime of violence.").  We follow the Supreme Court's guidance in answering this question.

courts, where no state supreme court precedent exists).

The ordinary meaning of the phrase "physical force" "suggests a category of violent, active crimes . . . ." Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S. Ct. 377, 383 (2004). Further, when interpreting "physical force" in defining the analogous statutory category of "violent felon[ies]," the Supreme Court has confirmed that "the phrase 'physical force' means violent force–that is, force capable of causing physical pain or injury to another person." Johnson, 130 S. Ct. at 1271; see also id. at 1272 ("[T]he term 'physical force' itself normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony.'").

Against this backdrop, we look to Florida case law to determine whether a conviction under § 787.02 necessarily involves the employment of "physical force" as that term is defined by federal law. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Section 787.02 requires that "some amount of force" be used. Proko v. State, 566 So. 2d 918, 920 (Fla. Dist. Ct. App. 1990); see also id. (noting that the state must prove, among other things, that a "defendant forcibly restrained the victim against her will"). However, the force need not be "substantial." Id. And, though that appears to be a fine distinction, case law since Proko makes clear that a § 787.02 offense can be committed without employing the type of "physical force"

6

contemplated in the Guidelines.

Specifically, Florida jurisprudence indicates that "the statutory elements of the offense of false imprisonment do not necessarily involve the use or threat of physical force or violence against an individual." Lamb v. State, 32 So. 3d 117, 119 (Fla. Dist. Ct. App. 2009); see also Kalogeras v. State, 58 So. 3d 889, 891 (Fla. Dist. Ct. App. 2011) (stating that false imprisonment does not "necessarily involve[] an intentional, unlawful threat by word or act to do violence to another"); Davis v. State, 20 So. 3d 1024, 1025 (Fla. Dist. Ct. App. 2009) (construing § 787.02 to permit false imprisonment to "be accomplished by physical force, but also in other ways" (emphasis added)); Mosquera v. State, 16 So. 3d 255, 256 (Fla. Dist. Ct. App. 2009) (suggesting that not all ways of committing false imprisonment "involve the use or threat of physical force or violence" (quotation marks omitted)). In light of this case law, we conclude that false imprisonment under Florida law encompasses several distinct crimes, some of which qualify as crimes of violence and others of which do not.[2]

---

[2] We note as well that this interpretation of federal law is consistent with that of the other Courts of Appeals to face the question. See United States v. Gonzalez-Perez, 472 F.3d 1158, 1161 (9th Cir. 2007) (holding that the district court erred in applying a sixteen-level enhancement because "Florida's false imprisonment statute . . . does not constitute a categorical crime of violence for the purposes of applying U.S.S.G. § 2L1.2(b)(1)(A)(ii)"); see also Kerr v. Holder, 352 F. App'x 958 (5th Cir. 2009) (holding that "[t]he Florida false imprisonment offense is not categorically a 'crime of violence' under [18 U.S.C. § 16(b)] because, in addition to forcible imprisonments, the statute also punishes 'confinement' of a child without the consent of his or

We now move to the second part of the modified categorical approach, inquiring whether the particular statutory phrase underlying Rosales-Bruno's prior false imprisonment conviction qualifies it as a "crime of violence." See Johnson 130 S. Ct. at 1273. To prove that the conduct underlying Rosales-Bruno's conviction involved the use of "physical force" and was therefore a "crime of violence," the government introduced three documents: (1) the information, a barebones document closely tracking the language of the three statutes that there was probable cause to believe Rosales-Bruno had violated; (2) the judgment, providing a record of conviction for two offenses to which Rosales-Bruno pleaded nolo contendere; and (3) an arrest affidavit, a sworn document outlining the arresting officer's on-the-scene understanding of the details of the crimes.

We will not rely on the arrest affidavit in making this determination. Evidence used to determine whether a prior guilty plea supported a conviction for a violent felony must "be confined to records of the convicting court approaching the certainty of the record of conviction." Shepard, 544 U.S. at 23, 126 S. Ct. at 1261. Like the Massachusetts police reports and complaint applications at issue in Shepard, the Florida arrest affidavit here was originally intended to be used to

---

her legal guardian, even if the child acquiesces or consents in fact to the confinement").

assess probable cause for a prosecution, and departs from the certainty of the record of conviction.  Compare Mass. R. Crim. P. 3 & 4, with Fla. R. Crim. P. 3.140 (limiting charging instruments to either information or indictment); see Burgess v. State, 831 So. 2d 137, 141 (Fla. 2002) (regarding such reports as inadmissible "based on the belief that observations by officers at the scene of a crime or when a defendant is arrested are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant" (quotation marks omitted)).  Thus, the arrest affidavit did not have indicia of reliability sufficient to meet Shepard's requirements.  See Shepard, 544 U.S. at 16, 126 S. Ct. at 1257.

We will not rely on Paragraph 30 of the PSR either.  Rosales-Bruno objected to the paragraph, which contains information from the arrest affidavit.  See Beckles, 565 F.3d at 843 (permitting the district court to rely on undisputed statements in the PSR).  The government claims that Rosales-Bruno's objection to the facts contained in Paragraph 30 of the PSR "was not made with the specificity and clarity required to raise a genuine dispute with those facts."  It is true that "vague assertions of inaccuracies" in the PSR are not enough to raise a factual dispute; and that "instead the defendant must make clear and focused objections to specific factual allegations made in the report."  United States v. Owen, 858 F.2d

9

1514, 1517 (11th Cir. 1988) (per curiam).

We find, however, that Rosales-Bruno clearly objected to specific parts of Paragraph 30 of the PSR, disputing the factual accuracy of that paragraph's description of the conduct underlying his false imprisonment conviction. See PSR Addendum ("The defendant also objects to paragraph 30 which contains the circumstances of the false imprisonment case."). This objection gave the notice that the objection requirements are designed to ensure. See United States v. Aleman, 832 F.2d 142, 145 (11th Cir. 1987) (noting, pre-Shepard, that the objection requirements protect the district court from having "to guess whether a challenge is being mounted as well as what [the] defendant wishes to contest."). Indeed, we have found similar objections to be sufficient. See, e.g., United States v. Sneed, 600 F.3d 1326, 1328, 1333 (11th Cir. 2010) (finding erroneous, under Shepard, the district court's use of police reports to substantiate facts after defendant "objected to the details of" a paragraph of the PSR). Thus, we conclude that Rosales-Bruno's objection was sufficiently clear and specific.

Relatedly, the government suggests that "in the face of a general denial of PS[R] facts, without more, courts may rely on such facts in calculating the guidelines without requiring the production of further evidence." The cases the government cites for that proposition are non-binding because they are out-of-

circuit. Equally significantly, none of the published cases the government cites was decided after Shepard.

The government is correct that, pre-Shepard, there was some "slight" burden for a defendant to substantiate his objection to a PSR. United States v. Restrepo, 832 F.2d 146, 149 (11th Cir. 1987). It seems probable that Rosales-Bruno would have met this pre-Shepard burden, since he would "not . . . be required to prove" the negative proposition that he was not violent, and his narrow objection to one paragraph of his PSR does not appear to be "just an attempt to harass the government." Id.

But, regardless, we have recognized that Shepard significantly impacted how we analyze objections to the PSR. See Sneed, 600 F.3d at 1332–33 (concluding that Shepard abrograted prior panel precedent, and required the holding that "courts may not use police reports to determine whether predicate offenses . . . were committed on" different occasions). And we conclude that Rosales-Bruno's clear, specific objection to certain facts contained in Paragraph 30 of the PSR was enough to place on the government the burden of proving those facts. See United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006) ("Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact.").

11

The remaining documents introduced by the government—the information and judgment—were insufficient by themselves to support a finding that Rosales-Bruno's conviction for false imprisonment was a "crime of violence." Essentially, both documents recited the elements of § 787.02, an offense which we have already concluded is not categorically a "crime of violence."

The government urges us to read together all of the charges contained in the information and judgment to infer a "crime of violence." We find no support in our precedents for reading charges collectively to infer the nature of a defendant's conduct. If anything, this approach is of dubious merit. See Shepard, 544 U.S. at 25 (plurality opinion) (counseling that principles of constitutional avoidance "limit the scope of judicial factfinding on the disputed generic character of a prior plea").

In any event, we decline to decide whether that course of action can at times be appropriate because, in this case, we need not reach the question. The information levied charges for three offenses: aggravated stalking, battery, and false imprisonment. The aggravated stalking charge was nolle prossed, while Rosales-Bruno ultimately pleaded nolo contendere to the battery and false imprisonment charges. Like false imprisonment, a conviction for the other charges contained in Rosales-Bruno's information can be secured without the "physical force" necessary to commit a crime of violence. See Johnson, 130 S. Ct.

12

at 1270–73 (deciding that battery, as defined under Florida law, is not categorically a "violent felony"); <u>United States v. Insaulgarat</u>, 378 F.3d 456, 466 (5th Cir. 2004) (holding that aggravated stalking, as defined under Florida law, is not categorically a "crime of violence").  Simply put, no conclusive implication of violence can be drawn from the inclusion of three non-"crimes of violence" in the judgment or information.  So without some further evidence, even if we did read the charges in the documents together, we would still lack assurance that Rosales-Bruno "necessarily" committed a "crime of violence" by pleading guilty to false imprisonment under Florida law.  <u>See</u> <u>Shepard</u>, 544 U.S. at 21, 125 S. Ct. at 1260.

As a result of our conclusion that it was error to find Rosales-Bruno's prior conviction under § 787.02 was a "crime of violence" under U.S.S.G. 2L1.2(b)(1)(A), we vacate Rosales-Bruno's sentence.  We express no opinion, however, as to what sentence would now be appropriate for Rosales-Bruno.  Instead, we remand so that the district court can resentence Rosales-Bruno on this record, in light of the 18 U.S.C. § 3553(a) factors and this opinion.

**VACATED and REMANDED.**